WOODRUFF (BINNS v.). See Case No. 1,424.

---

## Case No. 17,987.

### WOODRUFF v. The LEVI DEARBORN.

[4 Hall, Law J. 88.]

District Court, D. Georgia. July 17, 1811.[1]

VESSEL IN PORT—LIEN FOR SUPPLIES.

Where cordage and other materials are furnished, at the instance of the owner, to a vessel not on a voyage, but lying within the body of a county, no lien on the vessel is created, so as to affect her in the hands of a bona fide purchaser, without notice.

In admiralty.

Mr. Charlton, for claimant, argued, (1) Whether the admiralty court has jurisdiction? (2) Whether, if a jurisdiction can be sustained, there can be a lien on this ship, under the particular facts and circumstances of the case?

First point. As to the question of jurisdiction: The admiralty proceeds in rem, and therefore, if these are not charges upon the ship in specie, the court has no jurisdiction. The most important matter under this head which presents itself for the consideration of the court, is, whether it is to proceed according to the principles and doctrines of the civil law, as it obtains in those nations,

---

[1] [Affirmed in Case No. 17,988.]

which have made it the foundation of their jurisprudence, or according to the maritime law, as it has been adopted and explained by the courts of Great Britain. If, according to the civil law, it is admitted that the ship is specifically liable. Abb. Shipp. (Story's Ed.), and the authorities there cited, 151–153. It is contended that the same doctrine has been adopted by the English courts in the case of Rich v. Coe, by Lord Mansfield. Cowp. 636. It is there laid down that the person supplying necessaries, has three remedies: 1st. Against the owner. 2d. Against the master. 3d. Against the ship. But this case appears not only to have been subverted by other decisions, but by a subsequent decision of Lord Mansfield, himself. Wilkins v. Carmichael, 1 Doug. 101, cited in Abb. Shipp. (Story's Ed.) 158.

In this case, Lord Mansfield, after stating the reason why the master should not be permitted to retain the ship, adds that if "there was any lien originally, it was in the carpenter, and he, by giving up the possession, had parted with the lien, if he ever had one." Here is a strong doubt suggested whether even the carpenter, whose labour enables the ship to prosecute her voyage, can resort, specifically, to the ship; and it is impossible to reconcile this case with the opinion expressed in Rich v. Coe, because in the conclusion of this case his lordship observes: "Work done for a ship in England is supposed to be on the personal credit of the employer." The supplies in Rich v. Coe were furnished in England; the treble security was therefore as inapplicable in the one case as the other. Mr. Abbot considers this latter case subversive of the former. Abb. Shipp. 153.

In Westerdell v. Dale, 7 Term R. 312, Lord Kenyon questions the authority of Rich v. Coe, as establishing the principle upon too broad a basis. Abb. Shipp. 153. A shipwright who has taken a ship in possession to repair it, may retain that possession until he is paid, but if he parts with the possession, he abandons also his lien upon the ship itself. So it is with a tradesman furnishing supplies. Id. The master may hypothecate for supplies and repairs abroad; but if the ship is within port, infra corpus comitatus, they are not a lien or charge on the ship. Hoare v. Clement, 2 Show. 338; Abb. Shipp. 154. In Watkinson v. Bernadiston, the law is clearly laid down: "That if a ship be in the river Thames, and money is expended there, either in the repairing, fitting out, new rigging, or apparel of the ship, this is no charge upon the ship, but the person thus employed, or who finds these necessaries, must resort to the owner thereof for payment, and in such a case, in a suit in the court of admiralty to condemn a ship for the non-payment of the money, the courts of law will grant a prohibition." 2 P. Wms. case 107, p. 367. The law contained in this decree was considered to be so well established, that the reporter observes: "It was decreed by the master of the rolls, and seemed to be admitted by the counsel on both sides." See, also, Buxton v. Snee, 2 Ves. Jr. 521, in notes. The Scotch Case, Abb. Shipp. 159, and Ex parte Shank, 1 Atk. 234.

The doctrine of these cases does not appear to have been shaken by any of the later decisions in the admiralty of England. The case of The John, 3 C. Rob. Adm. 288, was an application by material men against the proceeds remaining in the registry. In this case Sir Wm. Scott observes: "I find, that it has continued to be the practice of this court to allow material men to sue against remaining proceeds in the registry, notwithstanding that prohibitions have been obtained on original suits instituted by them." This is a proceeding of material men, by original suit, against the Levi Dearborn, and if instituted in the admiralty of England would be a ground for prohibition, according to the admission of Sir William Scott and the authority of all the cases, with the exception of Rich v. Coe. In The Favourite, 2 C. Rob. Adm. (Am. Ed.) 232, it was said by Dr. Swabey, that material men, by the indulgence of the court, may be allowed to be paid out of proceeds in the hands of the court, although they would not be allowed to proceed originally against the ship. Sir Wm. Scott admits this to be true, where there remained an "undisputed surplus, after payment of the debt, which was the original cause of action," and no person objecting. (For the meaning of "material men," see the note a in the same page.) There has been no decision on the subject by the supreme court of the United States. There are two, however, one in the district court of Maryland, and the other in the district court of Pennsylvania, which are relied upon by the opposite counsel, as supporting the claim to jurisdiction. In the former it was decided by Judge Winchester that a shipwright has a lien on the ship for repairs in a port of the United States (Stevens v. The Sandwich [Case No. 13,409] note), and it is contended that a similar opinion is expressed in the latter, by Justice Peters (Gardner v. The New Jersey [Id. 5,233]). Anything that emanates from so great a man as was Judge Winchester, must carry with it a great weight of respect and authority; but the principles of this decision are founded upon the doctrines of the civil law, which cannot be received in our country; and it must also be remarked that Zouch, upon whose authority the learned judge principally relies, does not state correctly the practice of the English courts, which he brings in to the aid of the civil law opinions. Be this, however, as it may, we have only the isolated opinion of Judge Winchester in opposition to the whole current of English adjudications, and what the whole profession have been in the habit of considering the settled and established law and practice of this

country. An opinion directly opposite to that of Judge Winchester is expressed in the case of Shrewsbury v. The Two Friends [Id. 12,819] (admiralty court of South Carolina), in which all the leading British decisions are cited, and commented on by the learned judge with considerable ability. It results, I think, from a view of all the cases, and the reasoning in support of them, that this court has no jurisdiction.

Second point. But if the court should be of a different opinion, then we contend that the peculiar circumstances and facts of this case will exempt the ship from any liability. The lien attempted to be imposed must be predicated upon the idea of there being an owner and a master: for the treble security is against the owner, the master, and the ship. Now we say that at the time these repairs were made and supplies furnished, there was not, legally and technically speaking, either owner or master. This will appear from a short history of the case, as it was presented to the court on a former occasion. This ship was formerly called the Little Sally, owned by British subjects, and condemned in the admiralty for an infraction of the non-intercourse law. At the sale, pursuant to the decree of condemnation, she was knocked off to a Mr. C. H. Fisher, who previous to the obtainment of a title from the marshal transferred his right to the purchase, to a Mr. A. W. Scribner, who was put in possession of the ship, and appointed Lightbourne as master, in contemplation of an intended voyage. During the period of this possession by Scribner, the repairs and supplies, the subject of the present litigation, were made and furnished, upon the contract of Scribner, or the master Lightbourne. Only a small part of the sum which Scribner had agreed to pay Fisher for his purchase, was actually paid, and he had no other title than the memorandum of an agreement between him and Fisher, and the possession which he had obtained. The balance being demanded by the custom-house, and no further payment having been made by Scribner, the marshal again took possession. and advertized a second sale. In the meantime, the present claimant, Mr. John H. Dearborn, agreed to pay into the custom-house, the amount of the sum for which Scribner had purchased the ship of Fisher. This proposal was acceded to by the marshal and the custom-house,—a bill of sale was given by the marshal to Mr. Dearborn, and a register by the collector, under the new name of "The Levi Dearborn." The register is dated on the 16th of June. From the day of sale then to the obtainment of the register, the ship was in custodia legis, it was vested in the United States, not as owners technically considered, but for the purposes of sale. The United States cannot be owners, nor can the marshal, or officers of the customs be considered as owners, the latter by the express inhibition of the act of congress. Nor, to use the language of the civil law, could there be even a quasi ownership in the officers of the customs, because it would result from that doctrine, that the officers of the customs could give a bill of sale. Such a power would be inseparable from the character of ownership.

It is absurd to contend, that there could be an ownership without the power to transfer. Now the marshal only could give a bill of sale. If neither the government, or any officer representing it, can be considered as owners, or owner, there could be no master, and consequently no person whose contract could impose a specific liability on the ship for repairs and supplies. It must be admitted that all repairs are made, or supplies and necessaries furnished at the request of the owners, or master, and that the master derives his authority from the owners. Hence the law imposes a liability upon both. For what purpose is the master appointed? Why, to command a ship in the prosecution of a voyage. His functions have an extensive relation to the operations of a ship in the course of a voyage: all his contracts must bear upon that point. Now, if there were no owners, no master could be properly appointed where contracts can fix a lien upon this ship, because these contracts cannot be considered as furnishing the means for the employment of the ship in a voyage; and if the ship was in the hands of the officer of the government, they could not be considered as furnishing the means for the active employment of the ship, because the ship could not be employed by the government, or its officer. The liability of the ship (if she is liable at all) arises from the contract of the owner or the master. The corollary is, that there being in this case neither owner nor master at the time of the repairs and supplies, there is no foundation for this admiralty proceeding.

On the ―― day of June a bill of sale was given to J. H. Dearborn, the claimant, and his complete title is established by the exhibition of the register. He has paid all the expenses, which the collector admits to be due by the ship, antecedent to this transfer. The question then is, is this property, thus guaranteed to him under the faith of the United States, to be taken fettered with the burthens and contracts, imposed upon it by persons claiming an ownership, in direct opposition to a judgment of this court; or by the person acting as master by virtue of an appointment derived from the pretended owner? Did the government, the marshal, or the collector, previous to the sale to the claimant, recognize Mr. Scribner, as the owner, or ―― Lightbourne as his master? Mr. ――, the officer, representing the government, contended, that this court decided on a former occasion, that the claim of Scribner was totally unfounded, and that the ship antecedent to the sale to Mr. Dearborn, was never out of the legal custody and possession

of the marshal. Upon what ground of law, reason, or justice, then, can this ship in the possession of the present owner be made liable for antecedent repairs? By parity of reasoning, she could be charged specifically, for repairs and supplies in England, or any other contract previous to her condemnation, which operates as a lien. It results, that the remedy which these libellants have is confined to the persons who contracted with them, and that the ship is discharged.

Mr. Noel, for libellants.
Mr. Charlton, for claimants.

STEPHENS, District Judge. This ship is libelled for sundry articles, work done and for a claim of wages due several seamen; to avoid a multiplicity of suits several claims are consolidated so as to bring the demands of all or either before the court, against the jurisdiction of which a plea is interposed in the claims of J. H. Dearborn. It was necessary to have a full knowledge of this case, not only to hear argument as to the jurisdiction, but to have authenticated and proven the demands of such of the libellants as were principally before the court, and from which investigation the following facts appear. The ship Levi Dearborn was formerly called the Little Sally, a ship owned by British subjects, libelled by the United States for violating the non-intercourse law, and condemned as forfeited to the United States, in form, and decreed by this court to be sold: which was carried into effect. It appeared that Mr. A. W. Scribner was the first purchaser of this vessel, and had permission from the collector to proceed to lade her, but it also appeared that Scribner failed to comply with his contract, whereby the marshal re-advertised the ship, upon which some compromise took place between the parties interested, and John H. Dearborn became the purchaser, received the marshal's title and on the 19th of June last received a register for the said ship from the custom-house in Savannah. From the time Mr. Scribner undertook to be the owner of this ship he employs Captain W. Lightbourne as master, and proceeds to prepare the vessel for sea, under the name of the Franklin. An account is opened with Woodruff and Brant for ship's articles as appears by the exhibit, as also supplies of cordage by Fountain, and work and labour by Hewit, a shipwright. All these accounts were opened by express direction of Scribner, and they are admitted to be just by Lightbourne, the captain. It is also in evidence that at the time John H. Dearborn purchased this vessel he was apprised of some demands against her by the collector, which were satisfied, and hence became a fair bona fide purchaser. So far as the above relates to the libellants mentioned, it appears to be the summary of their case. The demands of seamen will form another subject of enquiry to see if they can proceed for their dues in this way.

The variety of authorities adduced to support the libel, and those opposed to it, it should seem have compressed all the reading on the subject, and which has been illustrated with great ability by the gentlemen on both sides; indeed, so much so as to leave very little research for the judge on a question of real importance taken in every point of view. It is to be understood that this court is of special jurisdiction and its exercise can only extend to maritime cases. All the transactions between these libellants were, with Scribner, the actual and reputed owner living in Savannah, the ship was on no voyage that caused the injury to repair her, or the supplies to aid her, so as to create any lien on the vessel whatever: the whole was a contract within the body of the county, a part of a sovereign state, whose constitution and laws afford daily an opportunity to seek redress in the very many tribunals of justice in this city. Now as I cannot see this case to be of admiralty or maritime jurisdiction so as to work a lien on a ship lying in the river, because labour was bestowed and supplies furnished the person who exercised an ownership, and at his instance, I cannot sustain the libel and subject a vessel in the possession of a bona fide purchaser for valuable consideration, to claims which he never could have supposed to have attached to the ship.

The various opinions that have been afloat on the points before me, seem now to be very well understood and the reading and result well digested in the case before Judge Bee, of Shrewsbury v. The Two Friends [Case No. 12,819], in Charleston, a case very similar to the present, and therefore the redress to the libellants must be at common law. The libel is dismissed, each party paying his own costs. As to the seamen, I find there are no ship articles or agreement signed by them, but they were daily labourers. They must be referred also to those who employed them, as divers others, who exhibited demands for various supplies to this ship.

[The decree was affirmed by the circuit court on appeal. Case No. 17,988.]